**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

```
*******************************************
```
In re:                                        *  Chapter 13
**Scott Littlefield**                          *  **Case No.  07-20792**
**Michelle Littlefield**                       *
                                               *
     **Debtor**                                *
```
*******************************************
```

## Memorandum of Decision

Sunbridge Capital, Inc., has moved for relief from the automatic stay, asserting that

periodic payments directed to it in respect of its purchase money lien on a 2001 Volvo dump

truck fall short of providing the adequate protection to which it is entitled.  Sunbridge has also

objected to the debtors' motion to allow and disallow claims.  The polestar for Sunbridge's

position on both matters is the "hanging paragraph" of Bankruptcy Code § 1325(a).[1]  It contends

that the entire contract balance is secured by the truck and that the hanging paragraph precludes

bifurcation of its claim.  The debtors disagree.

I conclude that the dump truck, though not a "motor vehicle . . . acquired for the personal

use of the debtor," is an "other thing of value" purchased within one year of bankruptcy.  Thus,

Sunbridge's secured claim comes within the reach of the hanging paragraph's claim modification

proscription.  This determination will govern further proceedings regarding the motion for relief

from stay and the motion to allow and disallow claims.

### Facts[2]

---

[1]     Unless otherwise indicated, citations to statutory sections are to the Bankruptcy
Reform Act of 1978, as amended, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code" or "Code").

[2]     The parties have stipulated to the essential facts.  Docket Entry No. 41.

On March 9, 2007, Scott Littlefield leased the Volvo truck from Sunbridge.  The lease is not a true lease.  It financed his purchase of the truck.  Sunbridge retains a purchase money security interest ("pmsi") in the truck.  The truck is a "motor vehicle" within the meaning of pertinent Bankruptcy Code provisions, including the hanging paragraph.  Scott acquired the truck for business, not personal, purposes.

On August 30, 2007, within one year of acquiring the truck, the Littlefields filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.

## Discussion

### 1.  What Look Left Hanging:

Recently, In re Look, 383 B.R. 210 (Bankr. D. Me. 2008), set out at length how recently enacted amendments to the Bankruptcy Code[3] limit a chapter 13 debtor's ability to bifurcate the claims of certain undersecured pmsi creditors.  In re Look, 383 B.R. at 212-16.  Those limitations are set forth in an unnumbered subparagraph, commonly referred to as the "hanging paragraph," spliced on to § 1325, following § 1325(a)(9).  Id. at 212 n.1.  Addressing operation of the hanging paragraph with regard to a car purchased for a debtor's personal use, Look observed:

> For consumer debtors, bifurcation has historically enabled them to modify the claims of creditors who financed car purchases and who held liens on the vehicles to secure their claims.  As Judge Clark recently explained:
>
> Outside of bankruptcy, of course, a car creditor's being underwater only matters if the creditor actually has to repossess and sell the car to satisfy its claim.  So long as the debtor wants to keep the car, however, the only way for the debtor

---

[3]      The "recently enacted amendments" were effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (April 20, 2005).

> to get a release of the security interest on the car is to pay off the car debt in full. Inside bankruptcy, however, the debtor is permitted to "mimic" what would happen in the event the lender sold the vehicle to satisfy the debt, but without the consequences of actually losing the car. A court rules what that value would be, without actually exposing the vehicle to sale, and the resulting number becomes the number that ends up being "financed" by way of section 1325(a)(5)(B)(ii). The balance of any debt owed the creditor is then separately treated as unsecured debt, paid pro rata along with other unsecured creditors.
>
> In re Sanders, 377 B.R. 836, 844 (Bankr. W.D. Tex. 2007). That ability to bifurcate secured car loans, which was unqualified until BAPCPA's enactment, is now limited by the terms of the hanging paragraph.

In re Look, 383 B.R. at 213.

> The hanging paragraph reads as follows:
>
> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(9)(*).[4]

Look's holding centered on the hanging paragraph's application to pmsi's created within 910 days of bankruptcy on "personal use" motor vehicles. But it acknowledged that the hanging paragraph has broader reach. Look did not address the hanging paragraph's application to a purchase money claim secured by a lien on "any other thing of value" incurred within a year of bankruptcy. In re Look, 383 B.R. at 214 n.4. Because Scott Littlefield's dump truck is not a

---

[4]      Because the hanging paragraph is unnumbered and follows § 1325(a)(9), it is often cited as § 1325(a)(9)(*). In re Look, 383 B.R. at 212 n.1. Its reference to § 1325(a)(5) and § 506 is to the Code provisions that otherwise enable a chapter 13 debtor to bifurcate undersecured claims into secured and unsecured components.

motor vehicle "acquired for ["Scott's] . . . personal use," and because the debt secured by it was incurred within a year of his bankruptcy, we must now address the question passed over by Look.

**2. It's Your "Thing," Do What You Want to Do:**

Both parties invoke the "plain meaning" doctrine to support their arguments. Their respective positions turn on this question: What is the referent for the word "thing" in the hanging paragraph's final clause? If it is "motor vehicle," as the Littlefields argue, then "any other thing" cannot comprehend a motor vehicle of any sort. Thus, a claim secured by a motor vehicle acquired for personal use within 910 days of bankruptcy cannot be modified via § 506 (ie., bifurcated). But a claim secured by a motor vehicle acquired for other purposes can be modified - even if the debt was incurred within a year of a bankruptcy filing. If, on the other hand, "thing's" referent is "motor vehicle . . . acquired for the personal use of the debtor," as Sunbridge asserts, then an "other thing" would include a motor vehicle acquired for other purposes. And, if the debt secured by it were incurred within a year of bankruptcy, the secured creditor's claim could not be modified.

I suppose this dispute could be decided by declaring whose plain meaning is "plainer." Or opining that, although the two interpretations are equally plain, one leads to an "absurd" result. Or choosing a result I preferred and marshaling whatever canons of construction I could find to buttress it. But none of these alternatives is principled.

I must begin with the words of the statute itself. United States v. Gibbens, 25 F.3d 28, 33 (1st Cir. 1994) (In an exercise in statutory construction, "[judges'] role, of course, is as interpreters of the words chosen by Congress, not as policymakers or enlargers of congressional

intent.  This role requires that we start with the statutory text.").  And I must proceed to give

them a sensible reading.

If the statute's textual content is not nose-on-your-face plain, I should attempt, if

possible,  to ascertain congressional intent.  This case, however, would require prodigious

divination.[5]  To assay the hanging paragraph's content, I am, at bottom left to consider how its

terms are "commonly understood."  See In re Look, 383 B.R. at 216 n.11.

Caselaw on point is in a nascent state.  Tallying the authorities leaves Sunbridge's

position in the distinct minority.  But the polls are far from closed.  And the votes that count the

most, those of the appellate courts, have yet to be cast.

Several recent opinions have something to say about the pesky problem our case

_____

[5]      Given the statute's amenability to opposing plain meaning interpretations, it is
ambiguous.  See Thinking Machines Corp. v. Mellon Fin. Servs. Corp. #1 (In re Thinking Machines
Corp.), 67 F.3d 1021, 1025 (1st Cir. 1995) ("[W]hen Congress' words admit of more than one
reasonable interpretation, 'plain meaning' becomes an impossible dream, and an inquiring court
must look to the policies, principles and purposes underlying the statute in order to construe it.").
I should, then, turn to the legislative history for guidance. Lomas Mortgage, Inc. v. Louis, 82 F.3d
1, 4 (1st Cir. 1996).  Unhappily, the legislative history is singularly unhelpful.  In re Quevedo, 345
B.R. 238, 243 (Bankr. S.D. Cal. 2006).  It merely sets up the conundrum of "thing's" uncertain
referent in another way:

> Section 306(b) [of the Bankruptcy Abuse Prevention and Consumer Protection Act
> of 2005] adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying
> that Bankruptcy Code section 506 does not apply to a debt  incurred within the two
> and one-half year period preceding the filing of the bankruptcy case if the debt is
> secured by a purchase money security interest in a motor vehicle acquired for the
> personal use of the debtor within 910 days preceding the filing of the petition.
> Where the collateral consists of any other type of property having value, section
> 306(b) provides that section 506 of the Bankruptcy Code does not apply if the debt
> was incurred during the one-year period preceding the filing of the bankruptcy case.

H.R.Rep. No. 109-31(I), Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 109th
Cong. (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 103, *quoted in* In re Ellegood, 362 B.R. 696, 698-
99 n.3 (Bankr. E.D. Va. 2007).

presents:

In In re Curtis, 345 B.R. 756 (Bankr. D. Utah 2006), the court determined that a creditor had to

hold a pmsi (as opposed to a non-purchase money security interest) in "any other thing of value"

in order to come within the hanging paragraph's antimodification protection.  In re Curtis, 345

B.R. at 759.  The collateral at issue consisted of two semi-truck tractors, purchased within one

year of the debtor's bankruptcy filing.   The parties apparently did not contest the point, but the

court proceeded on the premise that, although the semi-truck tractors were motor vehicles, they

qualified as "other thing[s] of value" for purposes of the hanging paragraph.  Id.  Thus, Curtis

recognizes that the term "other thing" can comprehend a motor vehicle acquired for non-

personal use.  In re Curtis, 345 B.R. at 764 n.28.

    In re Balsinde, No. 07-10093-BKC-RBR, 2007 WL 4247642 (Bankr. S.D. Fla. Nov. 29,

2007), exemplifies the other view.  It holds that a motor vehicle not acquired for personal use

cannot be an "other thing of value" and, thus, a pmsi claim in such a vehicle can be bifurcated,

even if the debt was incurred within a year of bankruptcy.  The court reasoned as follows:

> It is a "commonplace of statutory construction that the specific governs the
> general." [Citing cases.] This principle of statutory construction has been applied
> to the bankruptcy code. [Citing case.] . . . .
>       . . . .
> This . . . principle prevents the Court from adopting [the creditor's] reading of the
> hanging paragraph.  The first section of the hanging paragraph specifically deals
> with motor vehicles.  The parties stipulate that [sic] truck in question is [sic]
> motor vehicle as defined in the hanging paragraph.  Therefore, applying the canon
> of construction that "the specific governs the general" the second clause of the
> hanging paragraph is inapplicable to motor vehicles.
>
> This reading is further supported by the text of the hanging paragraph itself.  In
> order to adopt [the creditor's] reading the Court would have to ignore the word
> "other" in the phrase "any other thing of value".  The word "other" is [sic] word
> that connotes differentiation.  In this case the statute differentiates between motor
> vehicles and any other type of collateral.  It is simply impossible to adopt [the

creditor's] reading without ignoring the purpose and meaning of the word "other".

In re Balsinde, 2007 WL 4247642, at *2.[6]  See also In re Ford, No. 07-28188-svk, 2008 WL
1925153, at *4-5 (Bankr. E.D. Wis. April 29, 2008) (following Balsinde).

**3.  The *Thing* Is . . .**

The Balsinde rationale is unconvincing.  It does no good to invoke hoary principles of

statutory construction if one invokes them after embracing an assumption that dictates the result.

Only if the specific is assumed to be "motor vehicle," rather than "motor vehicle . . . acquired for

the personal use of the debtor," the conclusion (a non-personal use motor vehicle cannot be an

"other thing") is, as Balsinde said, "impossible."  In re Balsinde, 2007 WL 4247642, at *2.[7]

Indeed, if the specific controls the general, does not the hanging paragraph's first clause

*specifically* address motor vehicles acquired for the debtor's personal use?

Moreover, Balsinde's rendition does not square with a common sense reading of the

hanging paragraph's words. How, if at all, does the meaning of "any other thing of value" differ

from "anything else of value" on a straightforward reading?  What substantive difference can be

ascribed between the two phrases?  And if you substitute "anything else of value" in the statute's

text, it becomes clear that Balsinde misinterprets it.  Consider:  What if the 910-day period

---

[6]      Dictum in In re Hayes, 376 B.R. 655, 664 (Bankr. M.D. Tenn. 2007) supports
Balsinde's reading, but only because it, too, leaps to the conclusion that Congress intended the
hanging paragraph's first clause to be the exclusive antimodification provision for pmsi's in *all*
motor vehicles - not just those acquired for the debtor's personal use.

[7]      Balsinde also misunderstands Curtis.  It explains Curtis away by mistakenly reading
it to say that the semi-tractors (which Curtis clearly (and correctly) considered motor vehicles, In
re Curtis, 345 B.R. at 758) were not "motor vehicles" at all.  In re Balsinde, 2007 WL 4247642, at
*3.  As a result, Balsinde reads Curtis to be of a kind with In re Hickey, 370 B.R. 219 (Bankr. D.
Neb. 2007), a case that dealt with the hanging paragraph's application to a John Deere tractor.  In
re Hickey, 370 B.R. at 220.

comprehended only *blue* motor vehicles?  Would it follow that a *red* motor vehicle could not be

an "other thing of value?"  Or consider this: A house is on fire.  The occupants stand on the lawn

staring at the blaze.  One adult asks another, "Did you save the diamond ring you acquired to

wear to the king's coronation?"  The answer, "Yes, I got it."  "Did you leave behind any other

thing of value?"  Could the responding party possibly answer, "No," if he had left other diamond

rings in the flames?

    I must not impose my view of proper bankruptcy policy in place of Congress's.  United

States v. Yellin (In re Weinstein), 272 F.3d 39, 46 (1st Cir. 2001).  I am not in the business of

assigning a meaning to Congress's words in order to reach a result that suits me.  But neither am

I charged with deconstructing Congress's language when a common sense reading of it makes its

application crystalline.  Reading the statute as I do means just this: Congress *extended* (910 days,

as opposed to 1-year) antimodification protection to creditors holding pmsi's in motor vehicles

acquired for a debtor's personal use.  It did not target pmsi's in motor vehicles generally as a

category of security that, but for the personal use proviso, would receive less antimodification

protection than all other things of value.[8]

**Conclusion**

    The hanging paragraph extends antimodification protection to purchase money creditors

holding liens on a motor vehicle acquired by the debtor for his or her personal use if the debtor

incurred the debt within 910 days of bankruptcy.  I conclude that claims of creditors holding

---

    [8]    Is it sensible to think that, as to a debt incurred within one year of bankruptcy, by
virtue of one pmsi encumbering a "motor vehicle" and the other not, that antimodification protection
would be afforded to the creditor holding a lien in a bulldozer, but not a dump truck?  A flat-screen
television, but not a delivery van?

purchase money liens on motor vehicles acquired for nonpersonal use of the debtor cannot be

modified if the debtor incurred the debt within a year of the bankruptcy filing.  Further

consideration of Sunbridge's motion for relief from stay and its objection to the Littlefields'

plan's treatment of its secured claim will proceed in accordance with this conclusion.


 May 20, 2008                                                        /s/ James B. Haines, Jr.
_____                      _____
Date                                                                         James B. Haines, Jr.
                                                                                U.S. Bankruptcy Judge